ORVILLE ODDIE et al., Respondents, *v.* THE NATIONAL CITY BANK OF NEW YORK, Appellant.

45   735
d165   544

When a genuine check, drawn by one of its customers upon a bank, is presented by the drawee to that bank for deposit, it is substantially a demand of payment by the holder of the check. If the bank accepts the check and pays it, either by delivering the currency, or giving the party credit for it as a deposit, the transaction is closed between the bank and such party. And where the amount of a check, so presented, was credited to the holder upon his deposit ticket by the officers of the bank.—*Held,* the bank became liable for the amount of the check, although on the same day, and before the close of banking hours, but after it had paid other checks of the drawers presented later, it returned the check to the depositor as not good, and although the account of the drawer was overdrawn at the time of the deposit.

In the case of a deposit of a check drawn upon itself, the bank becomes at once the debtor of the depositor, and the title to the deposit passes to the bank.

(Argued May 29th; decided June 6th, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, in the first judicial district, affirming a judgment entered on the report of a referee, in favor of the plaintiffs, for $19,457.91. The findings of fact were as follows:

The defendants, at the times and dates hereinafter mentioned, were a banking corporation, doing business at the city of New York, where their banking house is situated. The plaintiffs kept their bank account with the defendants, making large and numerous deposits, and drawing numerous checks daily.

For the purpose of accommodating the plaintiffs, their pass-book, with a ticket or list of the items of the first deposit was received at the bank, soon after the opening of banking hours, and they were allowed to send in other deposits at their pleasure during the day, which were received by the receiving teller and listed on the plaintiffs' deposit ticket. After banking hours, the plaintiffs usually delivered to the bank another deposit ticket or list of all the deposits made during the day, when the whole was entered in one sum in the plaintiffs' pass-book. On the 15th day of May, 1869, at about five minutes before two o'clock, P. M., the plaintiffs delivered to the receiving teller of the defendants, at their banking house, for deposit, two checks for $18,237.50 each, one made by Frank Work & Company, and the other by Davis and Akin. The check of Davis' and Akin was drawn on the defendant's bank, and was payable to the order of plaintiffs, and was indorsed in the name of the plaintiffs by a clerk acting under a power of attorney. An assistant of the receiving teller put a stamp on the back of the check in a few minutes after it was delivered to the bank, certifying to the correctness of the indorsement of the check under the power of attorney of the plaintiffs.

It was the duty of the assistant to examine and certify as to the correctness of all indorsements of checks under a power of attorney, delivered at the bank for deposit.

The account of Davis and Akin with the bank was overdrawn in a large sum, from $60,000 to $70,000, before one o'clock of that day, and before the said check of that firm was delivered at the bank for deposit. The paying teller, knowing that the account of Davis and Akin was so overdrawn, continued to certify the checks of that firm as good, and so certified one check of that firm on the said bank at about a quarter after two o'clock, P. M., while the said check so delivered for deposit was in the possession of the bank, and was known to the paying teller to be in the hands of the receiving teller for deposit by the plaintiffs.

The plaintiffs continued to make other deposits with the receiving teller at the said bank before three o'clock P. M., making at least four other deposits before any objection was made on the part of the bank to the sufficiency of the said check of Davis and Akin as a good deposit of money.

The receiving teller returned the said check of Davis and Akin to a messenger employed by the plaintiffs to make deposits at the bank, at about five minutes before three o'clock P. M., with the information that it was not good, and requested him to hand it to the plaintiffs.

After the said check was so delivered to the receiving teller, he entered it on the deposit ticket, which was left by the plaintiffs with him, together with their pass-book and their first deposit ticket, soon after ten o'clock on the morning of that day, but made no entry thereof on the pass-book or in any of the account books of the bank. The receiving teller knew, before one o'clock P. M., of that day, that the account of Davis and Akin with the bank was overdrawn to the amount of $60,000 to $70,000.

The messenger of the plaintiffs, to whom the check was handed as above stated, took it to the office of Davis and Akin, and from thence took it to the plaintiffs, who,

immediately after, and at about two minutes after three o'clock P. M., of that day, again presented the check to the receiving teller at the banking house of the defendants, tendered it to the said receiving teller and demanded that he should receive it on deposit as money, which the receiving teller declined to do, and refused to receive it. The said check was not presented by the plaintiffs to the paying teller for payment or certification as "good," before its delivery to the receiving teller for deposit.

Davis and Akin were regular depositors and kept their bank account with the defendants' bank. Their account remained overdrawn at the close of the banking hours on the 15th of May last, in the sum of $37,351.29, and has never been made good. The defendants have sold some securities held by the bank belonging to Davis and Akin, and have applied the proceeds to the credit of their account, thereby reducing the amount of their overdraft to about $14,000, which sum still remains due and unpaid to the said bank, exclusive of the said check to the order of the plaintiffs for $18,237.50. The last deposit of Davis and Akin was for $52,050, made at about a quarter after two o'clock P. M., on the said 15th day of May, 1869.

The check of Davis and Akin was given to the plaintiffs for full value received from them at the time of the delivery thereof to the plaintiffs.

*William Henry Arnoux*, for appellant. On the question of the transaction of banking business. (*Boyd* v. *Emmerson*, 2 Ad. & E., 184; *Harker* v. *Anderson*, 21 Wend., 376; *F. and M. Bank*, v. *B. and D. Bank*, 16 N. Y., 125; *Nellis* v. *N. Y. C. R. R. Co.*, 30 N. Y., 505, 518; *Swinnerton* v. *Columbian Ins. Co.*, 37 N. Y., 174; *Smedes* v. *Utica Bank*, 20 John., 378; *Ere* v. *McDowell*, 14 Ir. C. L. R., 314.) On the question of demand. (*Downes* v. *Phenix Bank*, 6 Hill, 297; *Walrath* v. *Thompson*, 6 Hill, 540; Affirmed, 2 N. Y., 185; *Sears* v. *Patrick*, 23 Wend., 528; *Taylor* v. *Bates*, 5 Cow., 376; *Ferris* v. *Paris*, 10 John., 285; *Carroll* v. *Cone*, 40 Barb.,

220; *Jeffries* v. *Sheppard*, 3 Barn. & Ald., 696; Edwards on Bills, 675; Byles on Bills, 337; *Williams* v. *Mathews*, 3 Cow., 252; *Garvey* v. *Fowler*, 4 Sandf., 665; *Burgh* v. *Legge*, 5 Mees. & W., 418; *Carter* v. *Flower*, 16 Mees. & W., 749; *Harris* v. *Richardson*, 4 Car. & P., 522; *Terry* v. *Parker*, 4 Ad. & E., 502; *Kemble* v. *Mills*, 1 Man. & Gr., 757; *Custis* v. *State Bank*, 6 Blackf., 312.)   On the question of estoppel. (*Sparrow* v. *Kingman*, 1 N. Y., 242, 246; *Willard Canal Co.* v. *Hathaway*, 8 Wend., 480; *Fox* v. *Heath*, 16 Abb., 163; *Shapley* v. *Abbott*, 42 N. Y., 447; *Dezell* v. *Odell*, 3 Hill, 215; *Plumb* v. *Cattaraugus Ins. Co.*, 18 N. Y., 392; *Truscott* v. *Davis*, 4 Barb., 495; *Martin* v. *Angell*, 7 Barb., 406; *Otis* v. *Sill*, 8 Barb., 102.)

*Noah Davis*, for respondents, cited *Matter of Franklin* (1 Paige, 249); *Commercial Bank* v. *Hughes* (17 Wend., 94); *Carroll* v. *Cone* (40 Barb., 222); *Marsh* v. *Oneida Central Bank* (34 Barb., 298); *Pratt* v. *Foote* (9 N. Y., 463); *Dezell* v. *Odell* (3 Hill, 215, and cases there cited); Broom's Legal Maxims.

CHURCH, Ch. J.   The referee found that, about five minutes before two o'clock, the plaintiffs delivered to the receiving teller of the defendants, for deposit, the check in question, which was drawn by a customer of the defendants upon them, and that the receiving teller entered it on the deposit ticket of the plaintiffs.   These facts are sufficient to sustain the conclusion of the referee, that the defendants paid the check by receiving it as a deposit of money from the plaintiffs, and it is not material whether this is to be regarded as a conclusion of fact or of law, or whether it is stated under the findings of fact or conclusions of law.   This finding is corroborated by the fact that, subsequent to the receipt and entry of this check, the defendants continued to pay the checks of Davis and Akin, and also to certify their checks, although their account was in fact overdrawn.   These facts throw light upon the intention of the defendants to receive this check as a deposit, and to

take the risk of the account being made good by subsequent deposits, or of an indemnity from collaterals which the bank held, and the evidence was competent for that purpose.

It is insisted, however, that the presumption of law is, that the defendants were justified in regarding the check as deposited with them, as plaintiffs' agents to collect, and that they are not liable if they used due diligence; and we were referred to the case of *Boyd* v. *Emmerson* (2 Ad. & El., 184) as an authoritative decision to sustain this position, which, it is said, has never been overruled, and has been approvingly cited in this State. I have carefully examined that case, and I find it lacks a very material element to make it an authority in this case, and that is, that the bank in that case did no act and its officer said nothing indicating an intention or assent to receive the check on deposit. The customer laid the check on the counter while the clerk was making an entry in the books relating to other business of the customer, saying "place this to my account," and left the bank. The clerk said nothing, and did not see the check until after the customer had left the banking house, and did not "debit the drawer with the amount or credit plaintiff with it, or cancel the check."

The court placed its decision upon this distinction. Lord DENMAN, Ch. J., said: "I think the statements in the declaration, that in consideration of the check being delivered up to the defendants, they promised to pay the amount or to allow the plaintiff credit for it, are not proved. If they did so promise, undoubtedly they became holders to his immediate use, but I think that what passed at the time of the presentment was, at the very least, equivocal. * * * If, on delivering the check, he had said at once, 'cash me this check,' or 'give me credit for it,' he must have drawn from Reader a distinct answer; but by merely saying 'place this to my account,' he leaves it upon the usual terms, and subject to the contingencies to which bills or checks so paid in are liable, and if he received notice of dishonor in proper time it. was sufficient." The other judges placed their decision upon the same ground. It is unnecessary to determine how we should regard such a

transaction.   It is enough that the decision is not an authority for the defendants' position in this case.   That case was cited approvingly in *Harker* v. *Anderson* (21 Wend., 376), upon the point that when paper is thus received for collection, notice of dishonor the next day is in time, and not for the position now claimed for it.

The presumption of law invoked by the defendants cannot be indulged in against the evidence.   Here the plaintiffs clearly put in the check as a deposit, and the defendants as clearly received it as such, and credited the plaintiff with it. The credit on the deposit ticket was as significant an act, evincing the consent of the defendants to the payment of it, as if made upon the pass-book of the plaintiffs, and entered upon the books of the bank.

Financial business is transacted at banks in large amounts, with great rapidity, but according to definite and certain rules, which are well understood and acted upon by those engaged in that business.   Very little is said, but very much is understood, and there is an absence of all formalities which tend to embarrass the facility of doing the business.

In determining the legal effect of such transactions, we must apply the same rules applicable to all contracts and business affairs, and effectuate and carry out the intention of the parties, to be gathered from their acts and declarations, and the accustomed and understood course of the particular business.   Applying these rules, there can be no doubt but there was an express demand on one side, and consent on the other, that this check should be placed to the credit of the plaintiffs as a deposit.   The legal effect of the transaction was precisely the same as though the money had been first paid to the plaintiffs, and then deposited.   When a check is presented to a bank for deposit, drawn directly upon itself, it is the same as though payment in any other form was demanded.   It is the right of the bank to reject it, or to refuse to pay it, or to receive it conditionally, as in *Pratt* v. *Foote* (9 N. Y., 463), but if it accepts such a check and pays it, either by delivering the currency, or giving the party

credit for it, the transaction is closed between the bank and such party, provided the paper is genuine.

In the case of a deposit, the bank becomes at once the debtor of the depositor, and the title of the deposit passes to the bank. The bank always has the means of knowing the state of the account of the drawer, and if it elects to pay the paper, it voluntarily takes upon itself the risk of securing it out of the drawer's account or otherwise. If there has ever been any doubt upon this point, there should be none hereafter. A different principle would be applied to checks drawn upon other banks, or paper left for collection. In such cases the presumption of agency might arise.

Some stress was laid upon the circumstance that the check was presented to the receiving instead of the paying teller, but it is not claimed but the receiving teller had the authority to receive deposits, and to determine what checks upon the bank it would receive, and the depositor is not to be prejudiced by his misjudgment, or want of information even, as easy access to such information was within his reach; but there was no want of full knowledge on the part of both tellers that the drawer's account was overdrawn largely at the time.

The officers of the bank doubtless believed that he would make his account good. At all events, they assumed the responsibility, and the bank is bound by their action. (2 Keyes, 254; 23 N. Y., 335.) I think, also, that the defendants are estopped from claiming that they did not receive the check upon deposit. They entered it and acted with it as a deposit. The plaintiffs relied upon and acted upon the strength of the acts and admissions of the defendants. The claim now set up is inconsistent with the acts and declarations of the party, and the plaintiffs have been injured by being deprived of the opportunity of retaining the check and reclaiming the consideration, or otherwise securing themselves, until the drawers had failed and run away. It is true, that the time in which the plaintiffs would have had this opportunity was short, from two to three o'clock; but it

appears that during that period the drawers continued to transact business and draw checks upon the defendants' bank, and made deposits therein to a large amount, in one item of over $50,000. Under these circumstances it would be inequitable and unjust to permit the defendants to throw the responsibility of their own acts upon the plaintiffs, and the law has established a rule which forbids it. Every element of an *estoppel in pais* exists in this case. (*Dezell* v. *Odell*, 3 Hill, 215.)

It is urged that no demand of this money has been proved. A demand in some form is undoubtedly necessary in an action for money had and received against bankers and others holding the money in a fiduciary capacity. (*Downes* v. *Phœnix Bank*, 6 Hill, 297.)

It seems that the check was handed by the defendants to the plaintiffs' messenger at about three o'clock, with a request that he would call upon the drawers to make it good, which he did without success, and then delivered it to the plaintiffs, one of whom immediately, and within two minutes after three o'clock, took it to the defendants, and claimed that they had received it as a deposit, and were bound to credit the plaintiffs with the amount upon their books, which they refused to do, and refused to accept the check from their hands. This was substantially a demand, and so understood by both parties. The plaintiffs insisted, in substance, that they should be paid the check by having the amount put to their credit upon the books of the bank. The defendants refused, and evidently intended to refuse, payment in any form, claiming that they were not obliged to pay. A check or other more formal demand would have been superfluous.

The judgment must be affirmed.

All the judges concurring, except RAPALLO, J., absent.

Judgment affirmed.