# City   National   Bank   of   Selma   *v.*  Burns.

*Assumpsit against Bank by Depositor for Deposit.*

1.   *When charge is properly refused.*—A charge which withdraws ma-
terial evidence from the consideration of the jury, or requires explana-
tory charges to prevent it from being misleading, is properly refused,
notwithstanding it may assert a correct legal proposition.

2.   *Check on a bank by one depositor to another; what constitutes a pay-
ment.*—Where it is shown to be out of a bank's course of business to re-
ceive for collection checks drawn on it by its depositors, and a check on
it, drawn by one of its depositors in favor of another, is presented by the
latter, and the amount thereof is credited on his pass-book as a deposit,
and the check is placed on the file of paid and canceled checks, and af-
terwards the amount of the check is also entered to his credit, and

[City National Bank of Selma v. Burns.]

charged against the drawer, on the books of the bank; these facts constitute a payment of the check, and the amount of it can not be withheld by the bank on discovering that the check was an unauthorized over-draft, and the drawer was insolvent.

3. *Same.*—A charge is erroneous and properly refused, which affirms, as matter of law, that, if the drawer and payee of a check are customers of the bank on which it is drawn, the presentation of the check by the payee to the bank, and the noting or entry of it by the bank on his pass-book as a deposit, do not operate as a payment of the check; and that, if within a reasonable time the bank ascertains that the check is an unauthorized over-draft, and offers to return it, there is no liability to the depositor.

4. *Same.*—In such case no presumption arises that the bank received the check merely for collection and in the capacity of agent for the holder; but a presumption of payment of the check does arise and the *onus* of overcoming that presumption rests upon the bank; and it can only be removed by evidence that such was not the intention of the parties, derived from the course of businsss with the depositor, or from contemporaneous acts or declarations.

5. *Over-draft on bank; when a fraud.*—If a holder of a check, with full knowledge that the drawer is without funds in bank to meet it, and has no just reason to believe that the check will be honored in the absence of funds, he is wanting in good faith, if he demands and receives payment, especially if it is known to him, that the drawer is insolvent, and the bank is ignorant of the insolvency.

6. *Same; scienter must be clearly proved.*—In such case, fraud being imputed to the holder of the check, knowledge of the want of funds must be clearly traced to him. It can not be inferred from the relations existing between him and the drawer, however intimate, unless connected with inculpatory facts or circumstances.

7. *Laches not mistakes.*—Laches are not mistakes, nor can they be confounded.

APPEAL from the City Court of Selma.

Tried before the Hon. JON. HARALSON.

This was an action of *assumpsit* brought by the appellee against the appellant to recover the amount of a check drawn by Hudson, Kennedy & Co. in favor of the appellee, which, as he alleged, was deposited by him with the appellant on the 4th March, 1878. The material facts touching the deposit are substantially stated in the opinion. It was insisted, however, that the appellee, at the time he presented the check, had knowledge of the insolvency of the drawers, and that, therefore, the presentation of the check was a fraud upon the appellant; and it may be well to add the testimony introduced on the trial on this point. The evidence on the part of the appellant tended to show, that in the evening of the 4th March, 1878, the appellee came into the bank and paid $4,000.00, bills of Hudson, Kennedy & Co., which they owed the bank, and to secure which they had placed with the bank collaterals; that these bills were anticipated by the appellee before they were due; and that at the time the appellee paid these bills to the appellant, the cashier of the

bank gave up to him the collaterals which had been placed to secure them, and which amounted to nearly twice as much as the amount of the bills. The appellee was examined as a witness on his own behalf, and testified, that when he received the $1,031.00 check (the check for the deposit of which this suit was brought), he had no knowledge, that Hudson, Kennedy & Co. were not good at bank, or their credit was different from what it had been; that the bank had always paid their checks to him; that the $4,000.00 transaction was on the same day that he deposited the check, and was an entirely separate transaction; that Hudson, Kennedy & Co. had without his knowledge, hypothecated his cotton to the bank, and on learning this fact, he paid the $4,000.00 to get it; that they failed that day; and that he had once been their partner, but the partnership between them terminated in June, 1875. On cross-examination the appellee further testified, that he was a commission merchant in Selma, and his desk was in the same room with Hudson, Kennedy & Co., but on a different side of the room; that they were largely indebted to him, and would owe him about $8,000.00 after all the collaterals they gave him were exhausted; that when he withdrew from the firm in June, 1875, they turned over to him a large part of the assets of the firm, and that their indebtedness to him was on partnership accounts; that after the dissolution they sold his cotton and charged him much less than the usual rates; that he did not know much about their assets and liabilities; that he thought, until they failed, that they were in good condition; that after he deposited the check, Hudson, Kennedy & Co. stated to him that they wanted him to help them; that they said they wanted about $8,000.00, but they did not say, that they wanted the money that day; and that he had not spoken to them for six months before that time about their business or affairs. The appellant asked in writing several charges based upon the proposition, that the presentation of the check to the bank by the appellee, with knowledge that the drawers were insolvent, was a fraud upon the bank, which were refused by the court. The view taken by this court of these charges renders it unnecessary to set them out.

The appellant also asked the court in writing to charge the jury, that " entries upon books against the interest of the party making the same, are not conclusive against him, but, like other transactions, are open to explanation; and if the jury believe from the evidence, that the credit of $1031.00 was carried forward upon the books of the bank in furtherance of a mistake; and if they further believe from the evi-

[City National Bank of Selma v. Burns.]

dence, that the bank endeavored to correct the mistake as soon as it was discovered, and if they further believe from the evidence, that this effort was made within a reasonable time, and that Burns was not injured by the conduct of the bank, they must find for the defendant." This charge the court also refused to give. The court also charged the jury, at the request of the appellee, that " mistakes can not be corrected as against a party who has acted upon them, and can not be put in *statu quo*, and who would be damaged by the correction of the mistake.". The appellant reserved exceptions to the refusal of the court to charge the jury as requested, and to the giving of the charge above noted at the request of the appellee.

The trial resulted in a verdict and judgment for the appellee, from which this appeal was taken. The refusal of the court to give the charges noted above, and in the opinion, and the giving of the charge asked by the appellee, are assigned, with other rulings, which are not necessary to a report of the case, as error.

JAS. W. LAPSLEY, WM. R. NELSON, and PETTUS, DAWSON & TILLMAN, for appellant. (1) The facts of this case do not constitute a payment of the check drawn by Hudson, Kennedy & Co. on the appellant. The check was received *for collection*, and the bank had the right to hold it a reasonable time to ascertain the state of the account of Hudson, Kennedy & Co. with it. That the drawers and payee were depositors of the bank, made no difference.—*Boyd v. Emerson*, 2 A. & E. 184; 4 Nev. & M. 99; *Kilsby v. Williams*, 5 B .& Ald. 815, (7 Com. Law. 269); Morse on Banking, p. p. 320–1; *National Bank v. McDonald*, 51 Cal. 64; 2 U. S. Dig. p. 509, § 149; *Bank v. Smith*, 19 Johns. 115. (2). The appellant returned the check to Burns in due time; it acted with due diligence. *National Bank v. McDonald, supra.* (3). That Burns had been a former partner of H. K. & Co., and had his office in the same room with them; that they were largely indebted to him on 4th March, 1878, and that they sold cotton for him at less than the customary rates, and that they asked him for help on the day they failed, tended to show that he was familiar with their condition, and was not an innocent party. *Bank v. Baxter*, 31 Ver. 101. (4). The presentation of the check by the appellee to the appellant, with knowledge of the insolvency of H. K. & Co., was a fraud upon the appellant.—Morse on Banking, 253, and authorities cited; *Peterson v. Nat. Bank*, 52 Penn. St. 206. (5). There was a mistake made in the entry, and the bank had a right to correct

VOL. LXVIII.

it.  It was the act of the agent of the bank, and was not con-
clusive.—*Bank v. Smith,* 19 Johns. p. 115.

BROOKS & ROY and W. C. WARD, *contra.*—(1.) The present-
ation of the check was a demand for its payment; and the
acts and things done thereupon constituted payment, as if
money had been actually paid over the counter and re-depos-
ited.  The transaction was closed and complete; and the
title to the deposit passed to the bank.  Thenceforth Burns
had no recourse against Hudson, Kennedy & Co. for that
debt.  It was paid.  And if the bank had failed that day,
Burns could not have claimed the check or its proceeds.  The
bank had become the owner of the deposit, and was the gen-
eral debtor of Burns for the amount, not his bailee.—2 Dan-
iel on Nego. Ins. § 1621; *Oddie v. The Bank.* 45 N. Y. 735;
1 Waits Ac. & Def. 501, 502, 503, 516, 624; *Bolton v. Richard,*
6 Term Rep. (D. & E.) t. p. 74; *In Re Franklin Bank,* 1
Paige, 253-5; Byles on Bills, s. p. 172; *Nat'l Bank v. Burk-
hardt,* 100 U. S. 686.   (2). Trading corporations are bound by
the admissions, implications inferences, ratification, course
of dealing, silence and acquiescence, made or arising by or
through the acts of their officers, the same as natural persons.
*Melledge v. Boston Iron Co.,* 5 Cush. 175-9; 12 Wheat. 75-82;
7 Cranch, 299; 1 Brick. Dig. p. 403, § 33.   (3). The acts and
admissions of such officers, while acting within the general
scope of their authority, are none the less binding, because
they may be in violation of their real duty to the corporation,
or in discharge of their private instructions.—Story on Agency,
§ 127; *Mer. Bank v. State Bank,* 10 Wall. 605-45; 28 N. Y.
425-37; 16 N. Y. 125-30.   (4). In the case at bar, every ele-
ment of estoppel exists and is presented.—*Oddie v. The Bank,*
45 N. Y. 743; *Mer. Bank v. State Bank,* 10 Wall. 643.   (5). If
the check was paid and the transaction was closed by *mis-
take* of its officers, or by reason of insufficient information,
the bank must suffer the loss, because Burns was thereby
deprived of all opportunity to make good the amount out of
Hudson,  Kennedy & Co.; "and where one of two innocent
persons must suffer, he shall suffer, who by his confidence,
or silence, or conduct, has misled the other."—Story on
Agency, § 470; Byles on Bills, s. p. 173; *Bank v. Bank,* 10
Wall. 645-6.   (6). The weight of both reason and authority is
against the proposition, that a bank which receives checks
drawn on itself, and enters credit for the amount in the de-
positor's pass-book, *prima facie* receives them as his agent
for collection.  If the agency theory was favored at common
law, it ought not to be so now.  The modern system of bank-
ing requires, that the opposite principle should prevail in the

same sense, and for like reasons, that the introduction of steam and electricity has required the modification of various common law principles. (7). The first and second charges asked by the appellant were misleading, and also withdrew from the jury all the testimony showing the cancellation and payment of the check; and the final entries and transfers of credit on the books of the bank. They were, therefore, properly refused. *Thrash v. Bennett*, 57 Ala. 160; 37 Ala. 675; 51 Ala. 396; 60 Ala. 499; 57 Ala. 146; 39 Ala. 685. (8). The charges asked by the appellant, asserting that knowledge on the part of Burns, that Hudson, Kennedy & Co. had no funds in bank would constitute a fraud, besides being open to other fatal objections apparent on their face, were properly refused because they were *abstract*. There was nothing, which in law would amount to evidence, tending to show such knowledge. (9) Authorities cited by appellant criticised and discussed.

BRICKELL, C. J.—The first and second instructions requested by the appellant affirm, as matter of law, that if the drawer, and payee and holder of a check are customers of the bank on which the check is drawn, the mere presentment of the check by the holder to the bank, and the noting or entry of it by the bank as a deposit on his bank-book, is not a payment; and if within a reasonable time the bank ascertains the check is an unauthorized over-draft, and offers to return it, there is no liability to the depositor. These instructions could have been properly refused, because they, in effect, withdraw from the consideration of the jury facts which, in any point of view, are very material in determining the liability of the bank for the payment of the check drawn by Hudson, Kennedy & Co. These facts are, that the appellant did not receive for collection checks of which it was the drawee; and when this check was presented, not only made an entry of it on the book of the depositor, but placed it on the file of checks paid, and to be charged to the drawers, on which checks received for collection were not placed, and subsequently, on its books, charged the drawers, and credited the appellee, the holder, with it. The theory on which the instructions proceed, is that the check was received by the bank for collection, and that it was the mere agent of the appellee, bound only to the use of diligence in obtaining for him payment of it. Whether this theory is true or not, depends upon the intention of the parties, and the facts to which we have alluded are certainly of importance in ascertaining that intention. A court is not bound to give instructions to the jury, even when they affirm correct legal propo-

sitions, which withdraw material evidence from their consid-
eration, or which, to prevent them from misleading, would
require additional instructions.

We do not propose, however, after the very full argument
of the important question in controversy, upon this ground
to decline its examination. The facts are, that Hudson,
Kennedy & Co., cotton factors in the city of Selma, were in-
debted to the appellee in the sum of one thousand and thirty
one dollars, for the payment of which, on Saturday, March
2d, 1878, they gave him a check on the appellant, payable to
the order of Burns & Co., the name under which he was
doing business. On the ensuing Monday morning at about
nine o'clock, the appellee presented the check bearing his
endorsement to the cashier of the appellant with his bank-
book. The cashier entered it as a deposit on the bank-book,
placed it on the file of checks to be charged on the books of
the bank to the drawers, and subsequently on the books the
appellee was credited, and the drawers charged with it. It
was not the appellant's course of business to receive, for col-
lection, checks of which it was the drawee, nor were checks
it received for collection placed on the file on which this
check was placed. In the afternoon of that day, Hudson,
Kennedy & Co. failed, and on examining their accounts, it
was ascertained the check was an over-draft. The appellant
endeavored immediately to give the appellee notice, and
made an offer to return it on the next day, but the appellee
declined to receive it, and claimed, that it was paid, and the
appellant liable to him for its amount, as money deposited
with it.

There is some contrariety of decision as to the liability a
bank incurs, when a check of which it is the drawee is pre-
sented, and there is simply an entry of it to the credit of the
holder on his bank-book, as a deposit; whether it is to be
regarded as paid, or as received for collection. In Morse on
Banking, 320, it is said : "If the bank, as probably happens
in the great majority of cases, simply takes the check with-
out especial remark, and notes it in the depositor's bank-
book, thus treating it in every respect as if it were a check
upon any other bank, instead of upon itself, these facts do
not create a payment, or render the bank liable for the
amount to the depositor. The officers having dealt with the
check in the ordinary form, have placed the bank only under
the ordinary obligation, to wit : that of collecting the check
in the due course of business for the benefit of the depositor.
The collection is not complete, and the bank does not become
indebted to the depositor for the amount, until the credit has
been actually transferred." There are several adjudged cases

(18)

referred to, as supporting this view of the question. The first is that of *Boyd v Emerson*, 2 Ad. & Ell. 184; in which the plaintiff, a customer of a banking house, carried to it a check payable to himself, drawn by another customer, and left it with instructions to place it *to his credit*, or *to his account.* The check was not cancelled, or debited to the drawer, or credited to the plaintiff. The bankers having made inquiries about the drawer, who had already overdrawn his account, gave notice to the plaintiff on the next day, that the check would not be paid. It was held, that a promise to pay the check could not be implied from these facts. It was said by Lord DENMAN, that the holder ought to have given distinct notice, whether he presented it as a check to be paid, or to be merely placed to his account like other securities. In the absence of such statement, the inference was that the check was received in the latter character. The case is founded on that of *Kilsby v. Williams*, 5 Barn. & Ald. 815, in which a banker, receiving a check of which he was drawee from a customer who did not expressly demand payment, seems to have been regarded as the agent of the customer for the collection of the check, and bound only to the duties of such agent. It is obvious, the facts of this case very materially vary from the facts of either of these cases. There is here an entry of the check on the pass-book of the depositor, not materially different, it may be fairly inferred, from that which would have been made, if he had demanded the money on the check, and it had been paid to him, and he had handed it back to the cashier with the request that it be entered to his credit as a deposit; an entry which would not have been made, if the check had been received as a mere security to be converted into money by collection or otherwise. The check was defaced, and made to bear marks of cancellation, by being placed on the file with checks which were paid and were to be charged to the drawers, and it was on the books of the bank credited to the holder, and debited to the drawers. These facts, taken in connection with the fact, that the bank did not in its usual course of business receive for collection checks of which it was the drawee, distinguish this case from the case of *Boyd v. Emerson, supra,* and of *Kilsby v. Williams, supra.* They are evidence of a complete, executed transaction, by which the check was paid, Hudson, Kennedy & Co. ceasing to be the debtor of the appellee, and the bank becoming his debtor. It is difficult to discover in the transaction any element of agency; or any fact indicating any purpose on the part of the appellee to create, or on the part of the bank to enter into that relation. The check was not treated by the bank, as it would have treated a check of

which some other bank or banker was the drawee, and in reference to which it would assume no other duty than that of collection, transferring to the credit of the holder only what may have been derived from it. The mode of dealing with it is just that which would have been adopted, if it had not been an over-draft—if there had been funds in the possession of the bank, which were applicable to its payment. Contracts, agreements, transactions between parties should have operation and effect according to their intention, and it seems impossible from these facts to attribute any other intention to the parties, than that the check should be received by the appellant and placed to the credit of the appellee, as cash, as money deposited by him. There can be no doubt, that he was at liberty to draw for the amount of the check as money on deposit with the appellant, at any time before he was notified that liability for it was disavowed, and that his drafts in consequence would not be honored. Nor is there any room for doubt, that at any time during business hours of the day of the deposit, his check would have been honored by the appellant upon the faith of the deposit as money to his credit.

The case more nearly resembles, and falls directly within the principle stated in *Bolton v. Richard*, 6 Term, 139, that when a bank credits a depositor with the amount of a check drawn upon it by another customer, and there is no want of good faith upon the part of the depositor, the act of crediting is equivalent to a payment in money. Nor can the bank recall or repudiate the payment, because, upon an examination of the accounts of the drawer, it is ascertained that he was without funds to meet the check, though when the payment was made, the officer making it labored under the mistake that there were funds sufficient.—*Chambers v. Miller*, 13 Com. B. N. S. 125; *Levy v. U. S. Bank*, 4 Dall. 234; *Oddie v. National Bank*, 45 N. Y. 735; (S. C. 6 Am. Rep. 160); *National Bank v. Burkhardt*, 100 U S. 686. In the case last cited, it was said : " When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject it, or to receive it upon such conditions as may be agreed upon. If it be rejected, there is no room for any doubt or question between the parties. If, on the other hand, the check is offered as a deposit and received as a deposit, there being no fraud and the check genuine, the parties are no less bound and concluded than in the former case. Neither can disavow or repudiate what has been done. The case is simply one of an executed contract. There are the requisite parties, the requisite consideration, and the requisite concurrence and assent of the minds of those concerned." And

in *Oddie v. National Bank, supra*, it was said by CHURCH, C. J.: " When a check is presented to a bank for deposit, drawn directly upon itself, it is the same as though payment in any other form was demanded. It is the right of the bank to reject it, or to refuse to pay it, or to receive it conditionally, as in *Pratt v. Foote*, 9 N. Y. 463, but if it accepts such a check and pays it, either by delivering the currency, or giving the party credit for it, the transaction is closed between the bank and such party, provided the paper is genuine." And further it was said : "The bank always has the means of knowing the state of the account of the drawer, and if it elects to pay the paper, it voluntarily takes upon itself the risk of securing it out of the drawer's account or otherwise. If there has ever been any doubt upon this point, there should be none hereafter. "

The Supreme Court of California, in *National Gold Bank and Trust Co. v. McDonald*, 51 Cal. 64, (S. C. 21 Am. Rep. 697), dissent from the conclusions of CHURCH C. J., in *Oddie v. National Bank, supra*, and lay down the rule, that when a check on the same bank is presented by a depositor with his pass-book to the receiving teller, who merely receives the check and notes it in the pass-book, nothing more being said or done, this does not of itself raise a presumption that the check was received as *cash*, or otherwise than for collection. The case is variant from this case, in the absence of the material facts, that it was without the ordinary course of the business of the bank to receive for collection checks of which it was the drawee, and the entry of the check on the books of the bank, as a debit to the drawer, and a credit to the holder. It is the intention of the parties which must govern, and no intention can be presumed for, or imputed to them, which is inconsistent with their acts and declarations, and the usual, understood course of the business they are transacting. And when, as in this case, there is such a concurrence of facts pointing wholly to the creation presently of an unconditional engagement, and of the relation of debtor and creditor, there can be no authority for a presumption of law, which would change the engagement into one dependent on conditions, and the relation into that of mere principal and agent.

The bank could have received the check conditionally, and have come under obligations to account to the holder for it, only in the event that on an examination of the accounts of the drawers, it was found they had funds to meet it; or in the event that they provided funds for its payment. Or it could have asked for time to examine the accounts, that it might determine whether it would accept and pay, or dis-

honor the check.  It would have been within the option of the holder, to have accepted or rejected either of these propositions.  But when the holder presented the check with his pass-book, that the check might be entered as a deposit to his credit, it was a request for the payment of the check; and, as was in effect said in *Levy v. U. S. Bank, supra*, there can be no distinction between a request for payment in money, and a request for payment by a transfer to the credit of the holder.  The making of any such distinction would be as impolitic on the part of the bank, as it would be unjust towards the individual, who accepts the credit instead of his money. It is not very material in what form a bank manifests its acceptance of a check drawn upon it.  Whatever may be clearly intended by it as an acceptance, and is received by the holder as sufficient, ought not to be repudiated in courts of justice.  The acceptance, by which we mean an acknowledgment that the check is good, is as clearly manifested by a transfer of it to the credit of the holder, as it would be by noting or certifying it as *good*, when he may desire to use it in other transactions with strangers.   It is not of importance that the transfer is shown only by an entry on the pass-book of the holder.   There must be an interval during which that entry will be the only written evidence of the acceptance. The length of that interval depends wholly on the usages founded on the convenience, and the care and diligence of the officers of the bank in making entries on its own books.   The entry on the pass-book of the holder is the evidence usually given him, for his own purposes, in the ordinary course of business, to which he can resort to ascertain the state of his accounts—the indebtedness of the bank to him.   The bank preserving for itself evidence of its transactions and liabilities, may, and will cause entries to be made on its own books. These, after acceptance of the check has been manifested by an entry to the credit of the holder on his pass-book, are no more than memoranda of a past, completed transaction.   If there was no other evidence than such as is recited in the instructions we are considering, there would not be a presumption, that the bank received the check for collection only, and in the capacity of agent for the holder.   The presumption is of payment of the check by the bank voluntarily becoming the debtor of the depositor, taking upon itself the risk of securing it from the drawers.   The *onus* of removing that presumption rested upon the bank.   And it could be removed only by evidence that such was not the intention, derived from the course of business with the depositor, or from contemporaneous acts or declarations.

If when a check is drawn, the drawer is without funds in

bank to meet it, or subsequently, he withdraws them, the failure or delay of the holder to make demand of payment, and give notice of dishonor is excused, for the drawer can suffer no injury from the failure or delay.—2 Dan. Neg. Ins. § 1596. The check is a representation to the payee, that there are funds in bank with which it will be paid ; and if the representation is false, a fraud is committed upon the payee who innocently acts upon it. It may also be a fraud upon the bank, whose officers, confiding in the good faith of the drawer, may, without any examination of his accounts, be lured into its payment. It is sometimes stated very broadly, that it is fraud absolutely as to the bank, for a customer to draw upon it, when he knows he has not funds to meet his draft. Bad as the usage of banks may be, to tolerate, or to authorize over-drafts, it can not be doubted that they may tolerate or authorize them ; and that they are often employed as a means of making loans. It is a harsh judgment to. pronounce, without regard to the relations and course of business between the bank and the drawer, that an over-draft is a fraud even on the payee—it can not be a fraud on the bank, if the course of business with the drawer was such as to have authorized it. In Morse on Banking, 253, it is said : "It is a fraud on the part of a holder, or payee of a check, to present it for payment, either at the counter to be cashed, or through the clearing house by depositing it in his own bank, provided he knows at the time that the drawer has not to his credit in the bank on which it is drawn, any funds, or not sufficient funds to meet it. The holder has no right to attempt to mislead the drawer's bank into erroneously honoring the check, and then to keep the money if his *ruse* is successful. Under such circumstances the mistake of the bank will be revocable at any time after the completion of the transaction ; and it may, if need be, recover the amount of the wrong payment in a suit directly against the payee." The authority referred to in support of the proposition, is *Martin v. Morgan,* Gow, 123, also reported in 3 J. B. Moore, 635. In that case the holder of the check knew it was post-dated, and that the drawers were insolvent, presented it and received payment from the bankers on whom it was drawn, and to whom these facts were unknown. The post-dating of the check was illegal, and if the bankers had paid it with knowledge of the fact, they would have been subject to a penalty of £100. The holder was not only aware of these facts, but was also aware that there were not funds in the hands of the bankers to meet it, and that none would be provided. It was a clear case, not only of ignorance of facts on the part of the bankers, but of fraudulent concealment of facts by the

holder. We have been referred to the case of *Peterson v. Union National Bank*, 52 Penn. St. 206, as supporting the proposition as stated in Morse on Banking, *supra*, in which STRONG, J. said: "The drawing of a check upon a bank in which the drawer has no funds, and uttering it, is a fraud. It amounts to a false affirmation, that the money is there to meet it. Hence, it is a deceit practiced upon any person to whom the check may be negotiated, and equally upon the bank upon which it may be drawn. It is manifestly impossible for the officers of a bank to keep ever in memory the state of each depositor's account. To a certain extent, confidence is reposed in the depositor, that he will not present for payment a check which he has not provided funds to meet, and the abuse of that confidence is dishonest. It is not easy to see how it is less dishonest in the holder of a check drawn by another to present it for payment, when he knows the drawer has no funds in bank to meet it. His knowledge makes him a party to the fraud of the drawer, and he becomes a willing assistant therein." Before presenting the check and receiving credit for it, the depositor in that case had been informed by one of the drawers, that there were no funds to meet it, and knew the other drawer had absconded with a large amount of the funds of the firm, rendering it certain the check could not be made good by them.

Good faith is an essential element of all commercial dealings and should be vigorously exacted. Without intending to adopt, in the general terms in which it is expressed, the proposition laid down in Morse on Banking, *supra*, or in *Peterson v. Union Nat. Bank*, *supra*, we are of the opinion that, if the holder of a check has full knowledge that the drawer is without funds in bank to meet it, and has no just reason to believe that the check will be honored in the absence of funds, he is wanting in good faith, if he demands and receives payment, especially if it is known to him that the drawer is insolvent, and the bank is ignorant of the insolvency. If we were to concede the proposition, in the broadest terms in which it is stated, knowledge of the want of funds must be traced to the holder. It is fraud which is imputed to him, and the *scienter* should be clearly proved. The inquiry may, as in other inquiries involving fraud, authorize a large latitude in the admission of evidence. The relations between the holder and the drawer of the check become matter of pertinent inquiry. Such relations, however intimate, unless connected with some inculpatory facts and circumstances, can not justify the imputation of fraud. Nor can it be a just inference from such relations, that one party claiming a benefit under a contract with the other, has knowledge of every

[Hughes v. Anderson.]

infirmative fact, which may render that contract of injury to others, if they act upon it. It was only upon the business relations existing between the holder and drawers of the check, that it was proposed to found the inference that the holder knew the drawers were without funds to meet it. If this inference could be drawn, knowledge of all the dealings of the drawers in their business as cotton factors could be imputed to the holder of the check. The burden of proving the *knowledge* of the holder rests upon the bank ; and while it may be proved by circumstances, the circumstances must of themselves furnish a reasonable presumption or inference of it. The instructions requested upon this point were properly refused for the want of evidence to support them, and if they had been given would probably have misled the jury, as they would certainly have directed their attention from the legitimate points of inquiry.

The only mistake in the transaction was that of the cashier, who saw fit, though he had at hand the means of informing himself, to pay the check without an examination of the accounts of the drawers. There was no mistake as between the holder of the check and the bank. The one demanded, and the other made payment. It may be, if the cashier had examined the state of the accounts of the drawer, the payment would not have been made. But he chose not to make the examination—he waived all inquiry. Laches are not mistakes, nor can they be confounded.—*Chambers v. Miller*, 13 Com. Bench, N. S. 125 ; *Boylston National Bank v. Richardson*, 287 ; *Hull v. State Bank*, Dudley, (S. C.) 259.

We have considered the rulings of the City Court to which exceptions were reserved, and find in them no error prejudicial to the appellant.

Affirmed.