JESSE S. PHILLIPS, as Superintendent of Insurance of the State of New York, Respondent, Appellant, *v.* NATIONAL SURETY COMPANY, Appellant, Respondent.

Third Department, March 8, 1922.

Principal and surety — surety bonds — action on surety bond guaranteeing deposits of insurance company in bank — defense that insurance company fraudulently concealed insolvency of bank when procuring bond not made out — insurance company had credit balance in bank when it closed its doors because of insolvency — recovery allowed.

In an action to recover on a surety bond given to guarantee the payment of the deposits of an insurance company in a bank, a defense that the insurance company, at the time of procuring the bond, fraudulently concealed that the bank was insolvent is not made out where there is no evidence of knowledge on the part of the insurance company of the insolvency of the bank.

The credit balance of the insurance company in the bank at the time the bank closed its doors because of insolvency must be regarded as a *bona fide* credit balance, although it resulted from the deposit of overdraft checks of another depositor of the bank known as the James J. Boland Company, there being no reason to believe that the bank did not intend to loan the Boland Company the amount of the overdraft checks and credit the sum loaned to the insurance company when the checks were presented, as the bank had frequently honored the overdraft checks of the Boland Company, but at all times had arranged so that its receipts of cash indirectly obtained through the efforts of that company exceeded by a liberal margin the direct withdrawals permitted to it.

Since the insurance company had a *bona fide* credit balance in the bank and the bond insured its " net balance, subject to check or draft, at the time properly to the credit and in the name of the depositor therein," it was entitled to recover on the bond.

APPEAL by the plaintiff, Jesse S. Phillips, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office

of the clerk of the county of Albany on the 13th day of July, 1921, upon the report of an official referee appointed to hear and determine the issues, in so far only as the judgment refuses and omits to give plaintiff judgment for an additional sum of $50,000.

Appeal by the defendant, National Surety Company, from said judgment, and also from an order entered in said clerk's office on the 6th day of July, 1921, awarding to plaintiff an extra allowance of $500.

*Edward R. O'Malley* [*John H. Corwin, Clarence C. Fowler, M. J. Wright* and *William J. Gallentine* of counsel], for the plaintiff.

*Rosendale, Hessberg, Dugan & Haines* [*P. C. Dugan* of counsel], for the defendant.

H. T. KELLOGG, J.:

The bond sued upon in this action was executed on November 13, 1918. The bond sued upon in *Phillips* v. *United States Fidelity & Guaranty Co.* (200 App. Div. 208), decided herewith, was executed on June 2, 1919. We have held that the bond in the latter case was void for the fraud of the obligee in concealing from the obligor knowledge then possessed by it of the insolvency of the North Penn Bank. The same holding cannot be made in this action for the reason that the proof does not induce the conclusion that in November, 1918, when this bond was executed, the same obligee, the New York National Insurance Company, then possessed such knowledge. Substantially all the facts material to either action are set forth in the opinion handed down in the *United States Fidelity & Guaranty Co.* case. It will be seen from that opinion that many of the transactions relied upon as proof of knowledge possessed by the New York National Insurance Company took place in March, April and May, 1919. It will, also, be seen that communications between the officers of the North Penn Bank and the officers of the New York National Insurance Company, of great significance upon the question of knowledge, were had in April and May, 1919. None of these transactions and communications are available in this action. Without them we must hold that the defense of fraudulent concealment was not made out.

When the North Penn Bank closed its doors in July, 1919, the apparent credit balance of the New York National Insurance Company as a depositor therein was $116,305.22. The apparent credit balance of the Seneca Fire Insurance Company as a depositor therein was $256,447.18. The apparent debit balance of the James J. Boland Company, Inc., as a depositor therein, on account of overdraft checks charged, was $233,500.93. From September, 1918, to July, 1919, there never was a time when the account of the James J.

Boland Company, Inc., was not overdrawn for large sums. During this period nine Boland Company overdraft checks, aggregating $229,042.67, drawn for agency balances due the New York National Insurance Company, were credited to the account of that company and charged to the account of the Boland Company in the North Penn Bank. During the same period seven Boland checks, aggregating $146,324.70, given for agency balances, were credited to the Seneca Fire Insurance Company and charged to the Boland Company in their accounts in the North Penn Bank. If the Boland overdraft checks were eliminated from the three accounts the Seneca accounts would show a plus balance of $110,122.48, the Boland Company account a plus balance of $141,866.44 and the New York National Insurance Company a minus balance or overdraft of $112,737.45.

The bond in suit insured " the net balance, subject to check or draft, at the time properly to the credit and in the name of the depositor therein " of the New York National Insurance Company. The defendant contends that when the North Penn Bank closed its doors there was not a dollar of balance " properly to the credit " of the New York National Insurance Company; that no moneys were involved when the Boland Company account was debited and the New York National Insurance Company account was credited with the amount of overdraft checks drawn by a depositor and payable to a depositor in one and the same bank; that mere bookkeeping entries were made which were devoid of genuineness; that a rewriting of the accounts would show the New York National Insurance Company not to be a creditor of the North Penn Bank but its debtor in the sum of $112,737.45. With this conclusion we are not able to agree. The fact that there were no actual transfers of money or transactions in moneys following the giving of the overdraft checks possesses no peculiar significance. The relation between banker and depositor is merely that of debtor and creditor, and dealings between them rarely involve the handling of moneys. The things transacted find expression in items of debit and credit made upon the books of the banker, and are not accomplished by deliveries of cash. In this case the North Penn Bank wrote itself down a debtor to the New York National Insurance Company on delivery to it of the Boland Company overdraft checks. It wrote itself down a creditor of the Boland Company for a sum equal to the credit which it had given when it honored the overdraft checks. There is no reason to suppose that it did not intend to loan the Boland Company the amount of the overdraft checks and credit the sum loaned to the New York National Insurance Company when the checks were presented.

(*Oddie* v. *National City Bank of N. Y.*, 45 N. Y. 735.) When the doors of the North Penn Bank were closed the books of the bank by its credits given declared the bank to be a debtor to the New York National Insurance Company for the sum of $116,305.22. We see no ground for disputing this admission.

It is said that the apparent credit balance is a mere bookkeeping item made in furtherance of a fraud. It is an outstanding feature of these cases that from first to last the credit balances of the New York National Insurance Company together with the credit balances of the Seneca Fire Insurance Company always exceeded the overdraft balances of the James J. Boland Company. It will be seen from the opinion in the *United States Fidelity & Guaranty Co. Case* (*supra*) that in December, 1917, the credit balance of the New York National Insurance Company was $22,596.07 greater than the debit balance of the James J. Boland Company; that on December twenty-eighth, the credit balance was $27,007.28 in excess of the debit balance. It will be seen that the combined credit balances of the New York National and the Seneca Fire Insurance Companies exceeded the debit balances of the James J. Boland Company on or about August 31, 1918, by $41,030.91; on or about December 2, 1918, by $105,260; and on or about March 27, 1919, by $25,448.38. When the North Penn Bank honored an overdraft by check of the Boland Company for $67,930, in order to facilitate the purchase by the Boland Company of the stock of the Seneca Fire Insurance Company, it did so upon condition that Seneca Company moneys for a greater sum should be deposited in the North Penn Bank. It did in fact receive Seneca deposits amounting to $68,604.27 before the overdraft checks came in. When the North Penn Bank gave its two checks, one for $60,000 and one for $40,000, to the Boland Company, for use in taking up New York National Insurance Company stock pledged at a Buffalo bank, it did so only upon condition that New York National Insurance Company deposits in the Buffalo bank for a greater sum should be transferred to the North Penn Bank. Such deposits, amounting to $107,193.95, were in fact transferred before the checks were cashed. When the doors of the bank were closed the combined credit balances of the New York National and the Seneca Fire Insurance Companies were $139,251.47 in excess of the debit balance of the James J. Boland Company. Thus the North Penn Bank in its dealings with the James J. Boland Company from first to last, at all times so provided that its receipts of cash indirectly obtained through the efforts of that company always exceeded by a handsome margin the direct withdrawals permitted to it.

The transactions above recorded, as well as many transactions

of a similar nature, in conjunction with many letters and communications between the parties, clearly indicate that Ralph T. Moyer, the cashier of the North Penn Bank, and James J. Boland, the president of the James J. Boland Company, as well as the other managing directors of the Boland Company were engaged in a fraudulent scheme for the mutual benefit of the North Penn Bank and the James J. Boland Company. One of the purposes of this scheme was to enable the James J. Boland Company to use for its private purposes large amounts of the trust funds received by it for the New York National and the Seneca Fire Insurance companies. Another of its purposes was to procure for the North Penn Bank the deposits of the two insurance companies and the use of the moneys so deposited in excess of the sums permitted to be withdrawn by the Boland Company. The enormous overdraft account permitted the James J. Boland Company was the cover by wh'ch its use of hundreds of thousands of dollars of trust moneys was screened. This scheme in its conception and in its execution had no other victims in view than the New York National and the Seneca Fire Insurance companies. These companies never participated in the scheme or received benefits therefrom. The North Penn Bank, having assumed an indebtedness to the two insurance companies corresponding in amount to the overdraft checks of the Boland Company, in furtherance of a scheme to defraud these companies, is not now in a position to deny that indebtedness on the ground that the credit balances are the product of a fraud committed by it against the very companies which claim the credits and never participated in the fraud. We think the New York National Insurance Company, when the North Penn Bank closed its doors, had a net deposit balance in that bank of $116,305.22, and that this sum was " properly to the credit " of that company in the North Penn Bank. For this reason we think the plaintiff is entitled to recover upon the bond in suit.

The judgment should be affirmed, without costs.

Judgment unanimously affirmed, without costs; HINMAN, J., not sitting.

On March 17, 1922, the decision was amended by adding thereto the following:

The court disapproves of finding 21, and modifies findings 7 and 39 by substituting for the figures therein given the figures $116,305.22.

Leave granted to both parties to appeal to the Court of Appeals.