BANKERS TRUST COMPANY, Appellant, *v.* A. J. WELLS and Others, Defendants, Impleaded with RELBOK REALTY COMPANY, INC., Respondent.

First Department, January 15, 1926.

**Banks and banking — action by bank at which note was made payable to recover amount from prior indorser — bank paid note on due date by mistake — notice of mistake was not given to prior indorser — prior indorser is not liable to bank.**

A bank at which a note executed by two individuals is made payable cannot recover from a prior indorser the amount of the note after it paid the same on the due date, though the payment was made by the bank through a mistake as to the responsibility of the makers and apparently in the belief that it was a note executed by a corporation of which the makers were the principal officers and stockholders; especially is this true, where the bank did not give notice of the mistake in payment to the prior indorser.

APPEAL by the plaintiff, Bankers Trust Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of April, 1925, granting respondent's motion under rule 106 of the Rules of Civil Practice for an order dismissing the complaint as to it on the ground that it does not state facts sufficient to constitute a cause of action.

*White & Case* [*James Adam Murphy* of counsel; *Allen McCarty* with him on the brief], for the appellant.

*Gleason, McLanahan, Merritt & Ingraham* [*Frank L. Weil* of counsel], for the respondent.

MARTIN, J. The complaint in this action purports to set forth a cause of action for money had and received against the defendant Relbok Realty Company, Inc.

The defendants Wells and Weinberg made their note to one Gardiner for the sum of $2,500 payable at the banking office of the plaintiff. Wells and Weinberg were officers, directors and owners of all, or practically all, of the capital stock of Gardiner & Wells Co., Inc. The plaintiff was authorized to pay orders or notes of Gardiner & Wells Co., Inc., signed by Wells and Weinberg.

The plaintiff had made many payments for Gardiner & Wells Co., Inc., upon paper so signed.

The individual note of Wells and Weinberg was delivered to Gardiner, indorsed by him in blank and delivered for value and before maturity to the defendant Relbok Realty Company, Inc. It indorsed the note to the order of defendant Guaranty Trust Company of New York and delivered it to such indorsee, which, after indorsing the instrument in blank, presented it to the office of the plaintiff for payment. It was paid by the plaintiff with the funds of Gardiner & Wells Co., Inc., under a mistake of fact. The employee of plaintiff believed it to be a note of Gardiner & Wells Co., Inc. The note and monthly statement of Gardiner & Wells Co., Inc., rendered by plaintiff, were rejected, and Gardiner & Wells Co., Inc., demanded credit in its account for the amount so paid. The plaintiff was then obliged to credit Gardiner & Wells Co., Inc., accordingly. It is further alleged that demand was made upon Wells and Weinberg and they refused to pay plaintiff the amount of the note. Judgment is sought against the defendants separately, or in the alternative, because plaintiff is in doubt as to the defendant or defendants from whom it is entitled to redress. The defendant Relbok Realty Co., Inc., contends that the plaintiff has no claim against it.

The note, by its terms, was made payable at the office of the plaintiff, the Bankers Trust Company on October 22, 1924, which paid it on the day when and at the place where it was made payable; and the so-called mistake was not discovered until November 3, 1924, twelve days later. The complaint fails to allege that any notice whatsoever was given to the indorser Relbok Realty Co., Inc., or to any of the parties to the note other than Wells and Weinberg.

Assuming the truth of the facts set forth in the complaint, the defendant Relbok Realty Co., Inc., is not liable upon the theory of money had and received, or upon any other theory.

The case of *Riverside Bank* v. *First National Bank of Shenandoah* (74 Fed. 276), decided by the Circuit Court of Appeals for the Second Circuit, is directly in point. Judge Wallace, writing the opinion, said: " Upon principle, where the holder of a note presents it at the bank at which it is made payable, receives the money, and surrenders the paper, the transaction is, in effect, a purchase from the holder. It is a completed transaction, which cannot be rescinded except for fraud, or in case of mutual mistake. Where forged paper is delivered, the consideration fails and a different rule obtains. A case strictly analogous is where a bank accepts the check of a customer, and credits the amount to the account

of the depositor.   Of such a case the Supreme Court used this language:

" ' When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject it, or to receive it upon such conditions as may be agreed upon.   If it be rejected, there is no room for any doubt or question between the parties.   If, on the other hand, the check is offered as a deposit, and received as a deposit, there being no fraud, and the check genuine, the parties are no less bound and concluded than in the former case.   Neither can disavow or repudiate what has been done.   The case is simply one of an executed contract.   There are the requisite parties, the requisite consideration, and the requisite concurrence and assent of the minds of those concerned.'   *Bank* v. *Burkhardt*, 100 U. S. 686.*

" To permit a bank which has paid a note or check of a customer to rescind the transaction because it discovers that it was mistaken in the state of the customer's account, would, as is pointed out by Judge COOLEY in *Bank* v. *Burkham, supra,*† reverse the rule of commercial law, and transfer from the acceptor to the payee the responsibility which the former assumes by the acceptance and the loss, which should be left where it fell.   He said:

" ' We think it would be an exceedingly unsafe doctrine in commercial law that one who has discounted a bill in good faith, and received in its payment, the strongest possible assurance that it was drawn with proper authority should afterwards hold the moneys subject to such a showing as the drawee might be able to make as to the influences operating upon his mind to induce him to make payment.   The beauty and value of the rules governing commercial paper consist in their perfect certainty and reliability.   They would be worse than useless if the ultimate responsibility for such paper, as between payee and drawee, both acting in good faith, could be made to depend on the motives which influenced the latter to honor the paper.'

" The facts of this case illustrate the truth of these observations. The defendant, relying upon a certification by the plaintiff, took no steps to charge the indorser upon the note; and, if this action could be maintained, in order to regain the situation in which it was placed by the act of the plaintiff, would be obliged to resort to the uncertain chances of a litigation with the indorser.   Treating the case as one in which the money was paid by the plaintiff over its counter to the defendant, the language of the court in *Aiken* v. *Short* [1 Hurl. & N. 210] is apposite:

" ' The plaintiffs, having voluntarily parted with their money

---

\* *National Bank* v. *Burkhardt* (100 U. S. 686).— [REP.

† *First Nat. Bank* v. *Burkham* (32 Mich. 328).— [REP.

to purchase that which the defendant had to sell, though no doubt it turned out different to and of less value than what they expected, cannot maintain the action.' "

In *Oddie* v. *Nat. City Bank of New York* (45 N. Y. 735) the court set forth the law in the following language: " Financial business ' is transacted at banks in large amounts, with great rapidity, but according to definite and certain rules, which are well understood and acted upon by those engaged in that business. Very little is said, but very much is understood, and there is an absence of all formalities which tend to embarrass the facility of doing the business. * * * Applying these rules, there can be no doubt but there was an express demand on one side, and consent on the other, that this check should be placed to the credit of the plaintiffs as a deposit. The legal effect of the transaction was precisely the same as though the money had been first paid to the plaintiffs, and then deposited. When a check is presented to a bank for deposit, drawn directly upon itself, it is the same as though payment in' any other form was demanded. It is the right of the bank to reject it, or to refuse to pay it, or to receive it conditionally, * * * but if it accepts such a check and pays it, either by delivering the currency, or giving the party credit for it, the transaction is closed between the bank and such party, provided the paper is genuine.

" In the case of a deposit, the bank becomes at once the debtor of the depositor, and the title of the deposit passes to the bank. The bank always has the means of knowing the state of the account of the drawer, and if it elects to pay the paper, it voluntarily takes upon itself the risk of securing it out of the drawer's account or otherwise. If there has ever been any doubt upon this point, there should be none hereafter. A different principle would be applied to checks drawn upon other banks, or paper left for collection. In such cases the presumption of agency might arise.

" Some stress was laid upon the circumstance that the check was presented to the receiving instead of the paying teller, but it is not claimed but the receiving teller had the authority to receive deposits, and to determine what checks upon the bank it would receive, and the depositor is not to be prejudiced by his misjudgment, or want of information even, as easy access to such information was within his reach; but there was no want of full knowledge on the part of both tellers that the drawer's account was overdrawn largely at the time.

" The officers of the bank doubtless believed that he would make his account good. At all events, they assumed the responsibility, and the bank is bound by their action."

In *Consolidated Nat. Bank* v. *First Nat. Bank of Middletown, N. Y.* (129 App. Div. 538) the court said: "The check, when presented to the defendant, was paid by its acceptance by the defendant as valid, by marking the same paid, crediting the amount to the account of the plaintiff's agent, the Albany Trust Company, and charging it against the account of Davies & Co. As a matter of law, that closed the transaction without power of revocation." (Citing *Oddie* v. *Nat. City Bank of New York*, 45 N. Y. 735, 741, and *Pratt* v. *Foote*, 9 id. 463.)

In *National Bank of New Jersey* v. *Berrall* (70 N. J. Law, 757; 58 Atl. 189) the headnote states the law as follows: "Where a bank receives in the ordinary course of business a check drawn upon it and presented by a *bona fide* holder, who is without notice of the fact that payment thereof has been stopped, and the bank pays the amount of the check to such holder, it cannot afterwards recover back the money as paid by mistake, on the ground that payment of the check had been countermanded by the drawer."

In *Manufacturers' Nat. Bank* v. *Swift* (70 Md. 515; 17 Atl. 336) the court passed upon a similar question and said: "If the bank could recover this money from Swift, it would be an extremely dangerous matter to do business with a bank; no one could know when he could safely receive payment of a check. We think, however, that the law has provided rules for the transaction of this kind of business, which are sound and sensible, and which promote convenience and security in commercial dealings. When with full and perfect knowledge of the facts, and without the least element of surprise, imposition, or misrepresentation, a bank has elected to pay a check, the law could never permit it to undo the transaction and recover the money back."

When the bank paid this note, believing that the maker had funds there to meet it, the mistake was that of the bank. Its representatives were in a position to know the facts, and they were bound by business and banking practices which required them to act for the plaintiff accordingly and at its peril. Upon payment of the note, the matter was closed so far as this indorser is concerned.

The complaint having been properly dismissed as to the defendant Relbok Realty Co., Inc., the order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., MERRELL, FINCH and BURR, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.