(111 So. 29)

## THOMPSON v. FOURTH NAT. BANK OF MONTGOMERY. (3 Div. 769.)

(Supreme Court of Alabama. Nov. 4, 1926. Rehearing Denied Jan. 20, 1927.)

**1. Bills and notes ⬤⟿49—Corporation officer borrowing money in aid of business on personal note is principal and sole debtor and not accommodation maker.**

Officer of corporation, who in aid of business borrowed money from plaintiff bank, giving personal note, is not accommodation maker, but principal and sole debtor and only party against whom bank has right of action thereon.

**2. Appeal and error ⬤⟿1011(1)—In trial to court, findings on conflicting evidence have weight of verdict.**

Where case is tried on oral testimony before judge sitting as jury, his finding on conflicting evidence is accorded weight of jury's verdict.

**3. Appeal and error ⬤⟿1011(1)—Finding on conflicting evidence of judge sitting without jury cannot be disturbed.**

Where evidence was directly in conflict, finding of judge sitting without jury cannot be disturbed on appeal.

---

**4. Bills and notes ☞438—Bank canceling note on strength of forged bills of lading need not look to other funds for payment till fraud is discovered.**

Where drafts and forged bills of lading were given to bank to secure payment of check given to pay note, bank, having canceled note, was not required to look to other funds for payment till fraud was discovered.

**5. Bills and notes ☞438—Cancellation of note induced by forged bills of lading held inoperative, though maker, who did not furnish security, knew nothing of fraud (Code 1923, §§ 9139, 9143).**

Where corporation arranged with bank for security for cancellation of officer's personal note, giving forged bills of lading, acceptance of spurious security was such mistake as rendered cancellation of note inoperative under Code 1923, §§ 9139, 9143, though maker did not participate in fraud, since where two persons participate in transaction to common end each is agent of the other.

**6. Bills and notes ☞438—Banks must exercise reasonable care in accepting medium of payment and in canceling negotiable instruments.**

Banks are held to reasonable care in acceptance of medium of payment and in cancellation and surrender of negotiable instrument.

**7. Appeal and error ☞1010(1)—Judgment of lower court sitting without jury must be unsupported by whole evidence to justify reversal.**

To reverse judgment of lower court sitting without jury, Supreme Court must find judgment unsupported by whole evidence.

**8. Bills and notes ☞489(1)—Replication alleging bank's notice to maker of note within reasonable time that security for cancellation was forgery raised issue of reasonable notice.**

Replication alleging that bank, after discovery of forgery of bills of lading given as security on which it canceled note, notified maker within reasonable time, put in issue question of reasonable notice, so that special rejoinders setting up such issue were immaterial.

**9. Bills and notes ☞527(1)—Evidence held not to show laches or bad faith imposing loss on bank notifying maker of note of forgery of security for cancellation.**

Evidence *held* not to show such laches or want of good faith by bank in notifying maker of note that security for cancellation was forged as to impose loss on bank, where notice was given six days after confirming information of forgery was received.

**10. Bills and notes ☞444—Bank had right of action against maker of note, though demand for payment was not made for six weeks after notice that security for cancellation was forged.**

Notice by bank to maker of note which had been canceled that securities on strength of which cancellation was made were forged was notice of its rights growing out of fraud, and failure to make actual demand for payment for six weeks did not cut off its right of action.

**11. Bills and notes ☞444—Where security for note's cancellation was forged, bank may sue maker, though it did not surrender forged security.**

Notice by bank to maker of note which had been canceled that securities on strength of which cancellation was made were forged was notice of its rights growing out of fraud, and failure to surrender canceled check, dishonored drafts, and forged bills of lading did not prevent recovery, since party need not surrender evidence of crime connected with transaction.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action by the Fourth National Bank of Montgomery against J. A. Thompson. From a judgment for plaintiff, defendant appeals. Affirmed.

Ludlow Elmore, Hill, Hill, Whiting, Thomas & Rives and Rushton, Crenshaw & Rushton, all of Montgomery, for appellant.

It was the duty of the bank on the day on which the note fell due to apply all of the funds of the Hall-Beale Company to the payment of the note in suit. Tatum v. Commercial Bank & Trust Co., 193 Ala. 120, 69 So. 508, L. R. A. 1916C, 767; Fruitticher Electric Co. v. Birmingham, T. & Sav. Co., 201 Ala. 676, 79 So. 248. After the bank accepted the Hall-Beale Company check and marked the note "Paid," no liability rested on defendant. First Nat. Bank v. Burkham, 32 Mich. 328; Security Nat. Bank v. Old Nat. Bank (C. C. A.) 241 F. 8; Nat. Bank v. Berrall, 70 N. J. Law, 757, 58 A. 189, 66 L. R. A. 599, 103 Am. St. Rep. 821, 1 Ann. Cas. 630; 7 C. J. 682; Citizens' Bank v. Schwarzschild, 109 Va. 539, 64 S. E. 954, 23 L. R. A. (N. S.) 1092; Oddie v. Nat. City Bank, 45 N. Y. 735, 6 Am. Rep. 160; City Nat. Bank v. Burns, 68 Ala. 267, 44 Am. Rep. 138; Cohen v. First Nat. Bank, 22 Ariz. 394, 198 P. 122, 15 A. L. R. 701. The defendant was an accommodation maker of the note sued on, which fact was known to the bank. 1 Brandt, Sur. & Guar. (2d. Ed.) § 38; Hoffman v. Habighorst, 38 Or. 261, 63 P. 610, 53 L. R. A. 908; Baker v. Briggs, 8 Pick. (Mass.) 122, 19 Am. Dec. 311. Defendant changed his position to his prejudice, lost the benefit of securities held by him, by reason of the action of the bank in marking the note "Paid," and recovery of him cannot be had. 30 Cyc. 1321; Yarborough v. Wise, 5 Ala. 292; L. R. A. 1917E, 353. Thompson's countersignature of the check was no evidence of agency or conspiracy between Thompson and Hall. Bank of Anderson County v. Foster, 146 Ky. 179, 142 S. W. 225.

Steiner, Crum & Weil and Weil, Stakely & Vardaman, all of Montgomery, for appellee.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Thompson was not an accommodation party, but was primarily liable thereon. Code 1923, § 9055. The bank could not have applied funds to the credit of the Hall-Beale Company to the payment of Thompson's note, but was bound to honor the depositor's checks thereon. First Nat. Bank v. Prickett, 19 Ala. App. 204, 95 So. 920; Castaline v. National City Bank, 244 Mass. 416, 138 N. E. 398, 26 A. L. R. 1484; 2 Patton's Dig. 1926, p. 2140. Where the bank pays a check under an understanding of the person receiving the benefit that cotton be placed with the bank to make the check good, and the cotton is not so placed, the bank has the right to recover the amount paid under such mistake or error. First Nat. Bank v. Sidebottom, 147 Ky. 690, 145 S. W. 404; People v. Munday, 293 Ill. 191, 127 N. E. 364. Authorities cited by appellant to the proposition that payment of the check was a finality which cannot be reopened, are without application here. 30 Cyc. 1187; Code 1923, § 7669. The court tried the case without a jury, and the presumption is in favor of its findings of fact. Kennedy v. County Board, 214 Ala. 349, 107 So. 907; Fulton Co. v. Leder Oil Co., 207 Ala. 350, 92 So. 613; Hackett v. Cash, 196 Ala. 403, 72 So. 52.

BOULDIN, J. The suit is on a promissory note, brought by Fourth National Bank of Montgomery, the payee, against J. A. Thompson, the maker. The defendant pleaded payment and special plea A as follows:

"That the note here sued on is a negotiable instrument, and that prior to the institution of said suit the plaintiff, who was then and there the holder of said note, intentionally canceled the same."

This plea presents a defense under the Negotiable Instruments Law (Code, § 9139):

"A negotiable instrument is discharged: * * * (3) By the intentional cancellation thereof by the holder," subject to the exception that "a cancellation made unintentionally, or under a mistake, or without the authority of the holder, is inoperative." Code § 9143.

To the pleas, plaintiff filed special replication No. 2, presenting the issues upon which the cause was tried. For the dual purpose of reviewing the questions of law presented and of giving a statement of the case as made by the plaintiff's evidence, this replication is set out in full, as follows:

"The plaintiff alleges that the notes sued on in this case were marked paid by the plaintiff and surrendered to the defendant under the following circumstances:

"On, to wit, February 9, 1925, Hall-Beale Company, Inc., a corporation, tendered to the plaintiff, which was at that time and still is a national bank engaged in the banking business at Montgomery, Ala., as in payment of the note sued on, a check payable to the plaintiff in the sum of $20,000, drawn on the plaintiff bank by the said Hall-Beale Company, Inc., the said check being countersigned by the defendant as secretary of the said Hall-Beale Company, Inc., and who was in fact an officer, viz., its vice president, of said Hall-Beale Company, Inc. The plaintiff declined to accept said check in payment of the note sued on; the balance to the credit of the said Hall-Beale Company in the plaintiff bank being largely less than the amount of said check.

"Thereupon, R. E. Seibels, vice president of the plaintiff, called the defendant over the telephone and advised him that said check had been tendered as in payment of the note sued on, but that the bank would not honor said check until and only in the event a sufficient amount of cotton had been placed or deposited with the plaintiff to make the check good. Within a short time after this conversation and on the same day, the defendant, accompanied by Warren D. Hall, president of the said Hall-Beale Company, Inc., came to the said Seibels, at the plaintiff's bank, and within banking hours, for the purpose of complying with the said requirement of the plaintiff, and the said Warren D. Hall, in the presence of the defendant, handed to the said Seibels what purported to be three bills of lading issued to one Thornton, who was a clerk or an employee of the Hall-Beale Company, and purporting to bear the indorsement in blank of the said Thornton, one purporting to have been issued by the Western Railway of Alabama, a corporation engaged in business as a common carrier, for 77 bales of cotton, one purporting to have been issued by the Central of Georgia Railway Company, a common carrier for 78 bales of cotton, and one purporting to have been issued by the said Central of Georgia Railway Company for 22 bales of cotton, and asked that these three bills of lading be attached to two drafts which had been drawn by the said Hall-Beale Company on, to wit, February 9, 1925, on one L. J. Martin at Memphis, Tenn., payable to the plaintiff, one for $10,296.80, and one for $12,000, for which said drafts the plaintiff had previously declined to give credit to the said Hall-Beale Company. Thereupon the said purported bills of lading were attached to the said drafts, and credit was given the said Hall-Beale Company by the plaintiff for the aggregate amount of said drafts less the exchange charged, the plaintiff believing that the said requirement had been complied with. Thereupon the said check for $20,000, drawn by the said Hall-Beale Company and given as in payment of the note sued on, was honored by the plaintiff and the said note marked paid and surrendered to the defendant. The said drafts with the said purported bills of lading attached were immediately and in due course forwarded by the plaintiff for collection and were shortly thereafter and in due course returned unpaid, and it was discovered for the first time by the plaintiff that the said bills of lading were forgeries and worthless and represented no cotton received by said carriers, and the said Hall-Beale Company and the defendant were thereupon, on, to wit, February 27, 1925, and within a reasonable time, so notified. Plaintiff further avers that at no time has cotton or any other collateral or funds been placed or deposited with it in order to secure the payment of or make good the check honored as aforesaid by the plaintiff.

"Wherefore, the plaintiff alleges that the note sued on is still in force and effect and has not been paid."

The Hall-Beale Company, Inc., was a cotton dealer in Montgomery, buying, selling, and shipping cotton during the season of 1924-25. The business was conducted through Fourth National Bank of Montgomery in the usual way, issuing checks for cotton purchased and depositing drafts with bills of lading attached as cotton was sold and shipped. It had no established line of credit. Mr. J. A. Thompson was vice president and a principal stockholder, and countersigned checks in excess of $200. Warren D. Hall, the president, was in active charge of the business. On January 20, 1925, Mr. Thompson borrowed $20,000 from the bank on his personal note here sued upon, which sum was placed to his credit and check presently given by him to Hall-Beale Company, who deposited same to take care of a check then outstanding for a like amount in favor of Alabama Warehouse Company.

[1] An officer of a corporation, who, in aid of its business, borrows money from a bank, giving his personal note therefor, is not an accommodation party to the note. He is the principal and sole debtor, the only party against whom the bank has a right of action thereon.

The rule declared in Tatum v. Commercial Bank & Trust Co., 193 Ala. 120, 69 So. 508, L. R. A. 1916C, 767, to the effect that a bank holding a note indorsed to it by the payee, known to the bank to have been given for the payee's deposit available for the purpose, upon maturity, to charge the note against the payee's deposit available for the purpose, and, failing therein, the accommodation maker is discharged, rests upon the principle that the payee in such case is the principal debtor and the accommodation maker has the rights of a surety. The rule has no application here. Hall-Beale Company was not a party to the note; as to the bank it was not its debt. The parties purposely made it Mr. Thompson's debt. That Hall-Beale Company paid the interest, was known to have received the money, and was expected to take care of the note when due was an obligation to Mr. Thompson, not to the Bank. Without a check or other order the bank could not rightly charge the note to the company's account. Moreover, the evidence does not disclose an available balance equal to the amount of the note on February 9th, the date the note matured.

It is without dispute that on the following day, February 10th, the check of Hall-Beale Company, countersigned by Mr. Thompson, as secretary, of date February 9th for $20,000, marked, "payment note J. A. Thompson," was received at the bank; that there was not to the drawer's credit a sufficient amount of funds to pay it; that R. E. Sei-

bels, vice president of the bank, the officer in charge of that business, notified Warren D. Hall, president of Hall-Beale Company, that payment was refused and it would not be paid unless he or Mr. Thompson brought the cotton to cover it; that later the same day Hall brought the three bills of lading described in the replication, directed them to be attached to the drafts then in the bank; that thereupon the drafts, with bills of lading attached, were discounted, the proceeds credited to Hall-Beale Company's account, and the note canceled and surrendered to Mr. Thompson, then present; that it developed the bills of lading were forgeries and the drawee refused payment of the drafts.

Mr. Seibels testifies he also called Mr. Thompson by telephone and advised him that the check would not be paid unless cotton was put up; that following this he came with Mr. Hall and was present when the bills of lading were presented and the transaction had. Mr. Thompson denies the telephone call or any knowledge of the bills of lading at the time; admits he was present to get his note on report from Hall that it had been paid.

[2, 3] The case was tried on oral testimony before the trial judge sitting as a jury. His finding on conflicting evidence, under the rule in such cases, is to be accorded the weight of the verdict of a jury, and, the evidence being directly in conflict, the finding of the judge cannot be disturbed.

[4] The check honored on the 10th of February was not actually charged and canceled until the 13th. Appellant complains that the check was not paid from other funds than the proceeds of the drafts during this period. The argument entirely overlooks the obvious fact that the fraud perpetrated by the forged bills of lading had not been discovered at that time. The parties having arranged a special deposit to care for this check, there was no occasion to look to other funds until the fraud was discovered. Until then the bank could proceed without fault on the assumption the drafts would be paid and, if not, that they were secured by the cotton behind them. Plaintiff's evidence goes to the effect that other deposits were proceeds of drafts to take care of other purchases, not available to payment of this check, and at no time was there available funds to care for the check exclusive of the proceeds of the drafts.

[5] There is no evidence that Mr. Thompson had any knowledge or notice that the bills of lading were forgeries. His counsel stress in argument the view that, the bank having arranged with Hall-Beale Company the security upon which it canceled the note, without participation by appellant in the fraud, the acceptance of the spurious security was not such mistake as rendered the cancellation of the note inoperative.

As to the bank the Hall-Beale Company was acting for and on behalf of defendant in taking up his note. If, as plaintiff's evidence tended to show, Thompson was advised that the check would be paid only on putting up the cotton, and thereupon he went with Hall to put up the cotton through the banking method of draft with bill of lading attached, and Hall, in his presence, presented the forged bills of lading and induced acceptance thereof, Hall's act was in law the act of defendant. If two persons participate in a transaction to a common end, what is said and done by one in the presence of the other, with his acquiescence, in promotion of the deal, is in law the act of both. One is so far the agent of the other that neither can accept the benefits and avoid the burdens.

Special replication No. 2 presents a case of cancellation through fraud, and is sustained by the evidence. Not that Mr. Thompson had any knowledge of the forgery of the drafts, but that by reason of his relation to Hall in the transaction he is responsible for Hall's fraud in so far' as he obtained the cancellation of his note thereby.

That the cancellation of a note through fraud may be recalled as between the parties or persons occupying no better position is manifest. Nothing in the law of banking or of negotiable instruments excepts such transactions from the general laws relating to fraud in human affairs. City National Bank v. Burns, 68 Ala. 267, 44 Am. Rep. 138; Birmingham National Bank v. Bradley, 103 Ala. 109, 15 So. 440, 49 Am. St. Rep. 17; Cohen v. First National Bank, 22 Ariz. 394, 198 P. 122, 15 A. L. R., and note; 7 C. J. p. 682, § 411, note 76; 8 C. J. p. 614, note 52.

Presenting the forged bills of lading, the fraudulent representation that here is cotton as required, the discount of the drafts, honoring the check, and cancellation of the note constituted one transaction. Cotton was the basis of value behind it all. The fraud, in that there was no cotton, infected the whole. What we have written applies alike to the plea of payment and intentional cancellation of the note by the holder.

Much discussion appears in briefs touching the recall of payments made by banks through laches, as distinguished from mistake of fact. Illustrations are found where a bank unwittingly pays a check which results in an overdraft by the drawer. City Nat. Bank v. Selma, 68 Ala. 267, 44 Am. Rep. 138; Cohen v. First National Bank, 22 Ariz. 394, 198 P. 122, 15 A. L. R. 701, and note; Citizens' Bank v. Schwarzschild & Sultzberger Co., 109 Va. 539, 64 S. E. 954, 23 L. R. A. (N. S.), with note 1092. The same has been held where paid inadvertently after notice of countermand. National Bank of N. J. v. Berrall, 70 N. J. Law, 757, 58 A. 189, 66 L. R. A. 599, 103 Am. St. Rep. 821, 1 Ann. Cas. 630.

Many cases have arisen wherein the rights of bona fide holders or innocent third persons are involved. Thus, the acceptor of a forged bill of exchange cannot recover money paid to a holder in due course. Young v. Lehman, Durr & Co., 63 Ala. 519. But the payee and indorser of an altered check is liable to refund money thereon. Birmingham National Bank v. Bradley, 103 Ala. 109, 15 So. 440, 49 Am. St. Rep. 17.

In First National Bank v. Burkham, 32 Mich. 328, a bill of exchange, accompanied by securities, was discounted in good faith and for value by the payee bank, was accepted and paid by the drawee, and, after the proceeds had been drawn against, the drawee sought to recover against the payee bank because of mistake in that the securities proved spurious. The opinion by Judge Cooley, holding the drawee could not recover, placed the decision upon the ground that, the payee not having O. K.'d the security in any way, the drawee's mistake in passing upon the security could not be visited upon the payee to his loss. In Springs v. Hanover Nat. Bank, 209 N. Y. 224, 103 N. E. 156, 52 L. R. A. (N. S.) 241, the question for decision was concisely stated in the opinion thus:

"Whether the drawee of a draft who has paid the same to a bona fide holder for value, relying in part upon purported bills of lading attached by the drawer to the draft, but not mentioned therein, can, on discovery that the bills of lading are forgeries, recover back the moneys so paid from the payee or indorsee, who has neither guaranteed the genuineness of said instruments nor been aware of their fraudulent character."

The case involved payment of a Knight, Yancey & Co. draft with forged bill of lading attached. It was held the drawee, after paying the draft, could not shift his loss to the New York bank, an innocent holder for value, the draft making no reference to the bill of lading in such way as to give notice that it was conditioned upon their genuineness. We will not extend the review of this line of cases. We think none of them applicable here.

[6] Broadly speaking, banks are held to reasonable care in the acceptance of a medium of payment and in the cancellation and surrender of negotiable instruments. Certainty and security in commercial affairs suggest that completed transactions remain closed except for fraud or mistake of fact unmixed with laches. But such rule must not be made the means of inviting imposition and fraud in such transactions.

[7] Whether, assuming the correctness of appellant's version that the transaction was wholly between Hall-Beale Company, acting for itself only, and the bank, the mistake of the bank, induced by that company's fraud, justified a recall of payment and cancellation as against Mr. Thompson, we need

not decide. To reverse the lower court, we must find his judgment unsupported by the whole evidence. This, as we have seen, imparts such joint action and relation of agency between the parties as to render defendant responsible for the act of Hall.

[8] The replication alleges that after discovery of the forgery plaintiff did, on February 27th and within a reasonable time, notify the defendant thereof. This put in issue the question of reasonable notice and special rejoinders setting up that issue were immaterial.

[9] Under the evidence that confirming information of the forgery was not in possession of the bank until February 21st, that due diligence was exercised, and that the notice was given on February 27th, as soon as Mr. Seibels, the officer with whom the parties had dealt, returned from Florida, we do not find any such laches or want of good faith in the matter of giving notice to Mr. Thompson as should impose the loss upon the bank. There was no evidence that the bank had any information that Mr. Thompson held securities of Hall-Beale Company to protect him for advances made to that company, liable to be surrendered when his note was canceled.

The fact, offered to be shown, that he held such securities was not a factor in quickening diligence in giving him notice, if the bank was not so advised. Moreover, it does not appear the bank had received any notice of the forgery at the time Mr. Thompson surrendered the securities held by him. The testimony offered was to the effect that these securities were surrendered upon the cancellation of the note. To be an effective defense it must appear there was want of diligence in giving him notice in view of the circumstances, and the surrender of the securities was after he should have but had not received notice.

[10, 11] Under the facts alleged in replication No. 2, and supported by plaintiff's evidence, notice to Mr. Thompson that the bills of lading were forgeries was notice of the lawful rights of the bank growing out of the fraud. That no actual demand was made for the payment of the note until April 9th, some six weeks later, and after Hall-Beale Company had gone into bankruptcy, in our opinion, did not cut off plaintiff's right of action; nor did the failure of the bank to surrender to Hall-Beale Company or the defendant the canceled check, the dishonored drafts, and the forged bills of lading.

Mr. Thompson was not a party to these papers entitled to their surrender. He paid nothing and passed nothing of value to the bank at the time his note was canceled which the bank was due to return. On rescission, these papers were of no value save as evidence of the transaction which the bank was entitled to preserve. If Hall-Beale Company were entitled to them in any event, it would be subject to conditions making them available for use in any legal proceedings. They were material evidence of forgery, or uttering forged documents, as against the persons guilty thereof. It is not the policy of the law that to conserve private rights a party must surrender the evidence of crime connected with the transaction.

These announcements sufficiently indicate that we find no error to reverse in the rulings upon pleading and evidence presented for review, nor in the judgment of the court in favor of the plaintiff.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.